State vs. Zurich.

---

No. 12,221.

STATE OF LOUISIANA VS. VALERIAN ZURICH.

There is no delegation of power in the city charter of New Orleans to create as a MISDEMEANOR, punishable by fine and imprisonment, the non-compliance by an owner of property therein, of an ordinance prohibiting owners of property from erecting buildings on their premises until they had obtained the consent of the city engineer to the building of the structures (as being in conformity to city regulations) and until they had obtained a permit from him.

The appellate jurisdiction of the Supreme Court, in cases in which the constitutionality or legality of the fine, forfeiture or penalty imposed by a municipal authority was in contestation, is limited to a determination of the constitutionality of the fine, forfeiture or penalty, and to an examination of the particular facts necessary to be considered in order to reach a conclusion on that subject.

APPEAL from the Third Recorder's Court of the City of New Orleans. *Thompson, J.*

| | |
|---|---|
| 49 | 447 |
| 49 | 347 |
| 49 | 447 |
| 50 | 955 |
| 51 | 1094 |
| 51 | 1095 |
| 49 | 447 |
| d104 | 603 |
| 104 | 684 |
| 49 | 447 |
| 106 | 705 |
| 49 | 447 |
| 111 | 113 |
| 49 | 447 |
| 117 | 427 |
| 49 | 447 |
| 118 | 55 |
| 118 | 752 |

*Samuel L. Gilmore,* City Attorney, and *James J. McLoughlin,* Assistant City Attorney, for the City of New Orleans, Plaintiff, Appellee.

*Benjamin Rice Forman* for Defendant, Appellant.

Argued and submitted November 7, 1896.
Opinion handed down November 16, 1896.
Rehearing refused February 15, 1897.

## STATEMENT OF THE CASE.

The defendant was tried before the Third Recorder's Court upon the affidavit of a police officer, charging, under oath, that the defendant " did, on Monday, June 22, 1896, between the hours of three and four P. M., on Walnut and Front streets, within the jurisdiction of the Third Recorder's Court, then and there erect a building without a permit, in violation    *    *    *

" Wherefore, he (deponent) charged the accused with erecting a building without a permit, and prayed that he be arrested and dealt with according to law."

The ordinance of which a violation was charged was City Ordinance No. 6533, C. S., the 28th section of which is as follows:

" If the owner or owners of any lot or portion of ground whereon any building is to be constructed or erected, or of any building already erected, whereon any repairs, alterations or additions are to be made, shall begin such construction or alteration, etc., without having first obtained the certificate required in Sec. 1 of this ordinance, he shall be deemed guilty of a misdemeanor, and he shall be subject to a fine of not less than five nor more than twenty-five dollars, and    *    *    *    on his failure to pay said fine he shall be imprisoned in the parish prison one day for each dollar of the fine imposed."

The first section of the ordinance declared " that no building should be erected, or its erection commenced, or any alteration made on any building already erected or to be thereafter erected, unless plans and specifications, or a copy thereof, together with the contract cost thereof, should have been first submitted to the City

Engineer, and a certificate of approval and a permit granted by him therefor; and made it the duty of the City Engineer, without immeasurable delay, to issue such certificate, when such plans and specifications conform to the ordinance."

Certain rates were charged for permits, graduated according to estimated cost of building.

The title of the ordinance is " An ordinance for the proper construction of buildings; more effective prevention of fires, and for the better protection of life and property, and to be known as a general building ordinance for the proper construction of buildings in the city of New Orleans." It was adopted on July 5, 1892.

In its different sections, the Common Council undertook to lay down and establish rules controlling and governing the erection and repairs of buildings in the city of New Orleans, designating the kind of material to be used in certain limits, the character of the roofs, the thickness and height of walls, the supports of floors, etc.

The accused pleaded that the city of New Orleans was without power or authority to enforce any penalty for erecting a building without a permit; denied that he did at the time and place mentioned erect any building without a permit, and pleaded not guilty to the charge.

No separate and direct action was had on the plea as to the power of the Common Council to pass the ordinance, but the case went to trial; evidence was heard and judgment was rendered, imposing a fine, with alternative imprisonment, thereby maintaining the legality of the ordinance.

The opinion of the court was delivered by

NICHOLLS, C. J. Appellant directs our attention to the evidence, from which, he states, it would appear that he was about to build a boat for the Mexican government on the shore at the water's edge of the Mississippi river; that he erected (one hundred and twenty feet outside of the public levee) near the water's edge, with the permission of one Bisso, the riparian proprietor of the land fronting at that point on the river, a temporary awning or shed to protect his workmen while working from the sun and rain, and enclosd one end of the same as a small closet in which to lock up his tools, the cost of the whole not amounting to more than one hundred dollars; and he maintains

29

that an examination of the ordinance would show that it applied only to houses in the city, and did not apply to boats on the edge of a navigable stream.

He also calls to our attention that the recorder had imposed a heavier fine than the ordinance authorized even if it was violated; that the ordinance provided a penalty against the owner of the ground of not less than five dollars nor more than twenty-five dollars, and that on failing to pay the fine he should be imprisoned one day for each dollar of fine imposed, whereas the recorder had fined him twenty-five dollars or thirty days' imprisonment.

He argues to us, also, that nowhere has the power been given to the Common Council to prohibit the erection of a building without the permission of the City Engineer; that this would be a delegation of power not to be tolerated in a free country (citing State vs. Bright, 38 An. 1).

~ He further contends that a violation of the city ordinance could not be prosecuted in the name of the State of Louisiana, and that the police officer was without authority to advance a charge of the character which had been brought.

No brief has been filed on behalf of the city of New Orleans, nor argument made as to the question raised of the power and authority of the City Council to pass the ordinance in question.  The City Attorney very frankly admitted, in open court, that, in his opinion, the sentence imposed by the recorder was not justified by the facts, and that the provisions of the ordinance did not extend to the acts done by the defendant.  Counsel of the latter has pressed that admission upon us, as also the evidence itself in the record touching the facts, and urged that we reverse the judgment upon the merits, by reason of the facts and also upon the want of power in the recorder to pass the sentence he did (it being in excess of the penalty declared by the ordinance), independently of any question as to legality of the ordinance.  The proceedings in the case are of a criminal character, and, as such, are not reviewable by the Civil District Court or Court of Appeals.

Defendant's relief must be found in this court, if at all, either through appeal, or under our supervisory jurisdiction.

We have on a number of occasions declared that our appellate jurisdiction, under Art. 81 of the Constitution, in cases in which the constitutionality and legality of any fine, forfeiture or penalty imposed

by a municipal corporation was in contestation, was limited to determination of the question of the constitutionality or legality of the fine, forfeiture or penalty itself, and to an examination of the particular facts necessary to be considered by us, in order to reach a conclusion on that subject; that we were not, on appeal, authorized to examine into facts, which assuming the fine, forfeiture or penalty itself to be legal and constitutional, simply would go to show whether the accused was or was not guilty under the ordinance imposing the penalty; that questions of that kind, in allowable cases, could only be brought before us under and through our supervisory jurisdiction. State vs. Callac, 45 An. 29; State vs. Courcier, 46 An. 907; State vs. Dean, 45 An. 441; State vs. Fourcade, 45 An. 722; State vs. Marshall, 47 An. 646; Suthon vs. Houma, 46 An. 1561, 1562; Pratt vs. Holmes, 43 An. 129; Breazeale vs. Frank, 42 An. 226.

We have examined the charter of the city of New Orleans (Act No. 20 of 1882) to ascertain what powers were conferred by that instrument upon the Common Council. The eighth clause of Sec. 8 authorizes the city "to determine within what limits wooden buildings shall not be erected, and to prevent the reconstruction of old buildings within such limits." The ninth clause of the same section authorizes it "to regulate the safety, height and thickness of the walls and structures."

We find nothing more in the charter bearing on the subject of buildings or structures within the city.

As matters are presented to us, we do not understand that the right of the city to pass ordinances "regulating the safety, height and thickness of the walls and structures," as conferred by the ninth clause above mentioned, is before us, nor is that of the city to exact that, prior to building or altering structures, parties proposing to do so should submit plans and specifications of the same to the City Engineer, nor is that of the city to appoint a City Engineer, and to devolve upon him the duty of inspecting the plans and specifications submitted, in order to ascertain whether the proposed building or alteration will be in conformity to the ordinances of the city regulating structures, nor the right of the city through the City Engineer, or otherwise, to institute civil legal proceedings against owners, either by way of prevention by them of violation of the ordinances regulating structures or for punishing parties who have, in point of fact, violated the same, and forcing what has been done to be undone.

Defendant has not been charged with having erected a building or structure which does not come up to the standard requirements of the city ordinances; he has not been charged with not having, before erecting a building, submitted plans and specifications to the City Engineer. What he has been charged with, and what he has been convicted of, is, of having, without the prior approval by the City Engineer (evidenced by a permit from him), erected a building. The question, therefore, is, whether the City Council has the power and authority to impose upon owners, as a condition precedent to the exercise of a right by them of erecting buildings upon their property or of making alterations in buildings already erected that they should have the prior approval of the City Engineer to those buildings or alterations evidenced by his permit and to make the erection or repair of such buildings without such prior permit a misdemeanor punishable by fine and imprisonment. The power of the city to order an inspection, through the City Engineer, of the buildings and alterations after they are made, or as they are in progress, is not denied, nor is the liability of the owner to have civil proceedings taken against him, to compel him to conform to the regulations of the city on the subject of structures. What is denied is that the right springing from ownership to build structures upon one's premises, or to make alterations upon the same, can be made to be held in abeyance by and subordinated to the prior consent of a city official under penalty of a criminal prosecution.

Defendant affirms that property rights are arbitrarily, unreasonably and illegally hampered by an ordinance which substantially creates a tribunal from whose decision in the premises no legal method of review has been provided, and which would force owners into affirmative, active, legal proceedings, in order to exercise rights which should be free and untrammeled, unless and until actually exercised or attempted to be exercised in violation of law. They contend that while it may be perfectly legitimate for the city to pass regulations on the subject of certain buildings within its borders, and devolve upon a particular officer the duty of seeing that the regulations made by the city are conformed to, his duty could not be made to extend beyond ascertaining whether buildings, or alterations thereto, or proposed to be made, would be in violation of ordinances, or those actually erected were so violative, and to instituting civil legal proceedings against the parties, either by way of prevention or remedy.

He contends that the city has no authority to appoint a city official and to delegate to him the power of primarily determining whether the owners of property should be permitted to exercise their property rights or not under penalty of a criminal prosecution.

We have reached the conclusion in this case that the ordinance in question in so far as it seeks to create as a misdemeanor the erection by an owner of a building upon his property without having first obtained a certificate of approval or permit of the City Engineer, and to subject the owner, in case of conviction of violation of the prohibition of the ordinance, to fine and imprisonment, can not be sustained. We have examined, as we have said, the charter of the city and have failed to discover in it anything which would tend to show any delegation of the right to impose, through criminal proceedings, a fine or imprisonment upon an owner of property for non-compliance with an ordinance requiring him to postpone the erection of a building upon his premises until he had obtained the consent of the City Engineer to the building proposed to be erected (as being in conformity to the city regulations), and obtained a certificate or permit from that officer.

In State vs. Bright, 38 An. 4, we declared that it was acknowledged by text writers and supported by abundant authorities that a municipal corporation had no right to enforce obedience to the ordinances which it has the power to pass, by fine or imprisonment, or other penalty, unless that right has been unquestionably conferred by the lawgiver; for this is inflicting a punishment for the commission or omission of an act declared an offence, a prerogative, which, as a rule, appertains to the sovereign alone (citing Dillon, par. 336, p. 553, Desty on Tax., p. 765), and that the words "shall provide for the punishment of any violation of such ordinances or regulations by fine or imprisonment," found in Sec. 7, referred to ordinances which the Common Council was authorized to pass and have executed as might be necessary and proper to preserve the peace and good order of the city and to maintain its cleanliness and health. This decision was in line with the cases, 6 An. 515 (Municipality vs. Pance), State vs. Manessier (Opinion Book 53, p. 237), and 34 An. 750 (State vs. Patamia).

The ninth section of the charter of the city authorizes it "to regulate the safety, height and thickness of the walls and structures." The ordinance we are considering was passed, presumably under

that grant of power, but the council, after laying down in the ordinance specific directions as to what constitutes safe building, made the erection of buildings in contravention of these provisions a misdemeanor which would subject parties contravening the same to liability to fine and imprisonment, and created as a MISDEMEANOR " the erection of buildings without having first obtained the approval and permit of the City Engineer."

Under the ordinance a person erecting a building in strict conformity to what the council had laid down as the rules of safety governing structure would, none the less, be subject to fine and imprisonment—his offence being not a violation of the rules themselves of safety, but of the violation of a rule which the council thought proper to establish in supposed incidental aid of the observance of the rules.

We do not think the city has the authority to enforce criminally this obligation incidentally imposed upon property owners by fine and imprisonment for non-observance of the same.

Ownership gives the right to one to enjoy and to dispose of one's property in the most unlimited manner, provided it be not used in any way prohibited by laws or ordinances. (C. C. 491.) So long as an owner does not use his property in a way prohibited by law or statute, he is free to act. The city of New Orleans had no authority to hamper it and make its exercise depend upon a prior permit or consent of the City Engineer under penalty of criminal prosecution. There are ample adequate, legal remedies open to the city for the enforcement of the city rules. Opposition may be made to every species of new work from which injury is apprehended. Parties insisting upon erecting illegal or improper structures may have their work suspended by order of court if necessary. Works done in spite of opposition may be destroyed in proper cases and matters replaced in the former situation. The method selected by the council for enforcing their ordinance by subjecting property owners to a criminal liability to fine and imprisonment for the mere fact of building upon their own premises, without the prior consent and permit of the city, is, in our opinion, not only arbitrary and unreasonable, but the city is without authority to adopt it. It fetters the rights of ownership in an unwarranted degree.

It is hereby ordered, adjudged and decreed that the judgment appealed from be and the same is hereby annulled, avoided and re-

versed; and it is now ordered, adjudged and decreed that the prosecution be dismissed.

### ON APPLICATION FOR REHEARING.

In the brief of the counsel for the city of New Orleans applying for a rehearing it is said:

"When this case was submitted to the court counsel for appellee conceded that Ordinance 6533 did not apply to the offence of which defendant was convicted, and that the action of the recorder was a manifest error. The court was asked in view of this admission to reverse the judgment without considering the legality of an ordinance which both parties to the suit declared was not applicable to the state of facts. It is true that were the court to examine this case strictly under its appellate jurisdiction it might be compelled to exclude consideration of the facts. But it is urged upon the court that in this case where both parties have agreed upon the facts and where both parties have urged the court to act upon the facts, it is certainly within its equity powers to treat this particular case as if it came under its supervisory jurisdiction."

In the exercise of the powers granted to us under Art. 81 of the Constitution in the class of cases giving an appeal when the legality or constitutionality of a fine imposed by a municipal ordinance is in contestation, we are constantly called on (under the limitations of that article) to grant relief of the same character as that which we would grant in other matters through writs of prohibition—that is to say, on appeal in such cases we pass upon the powers and authority of the municipal body which enacted the ordinance complained of. It is possible we might be authorized, in exceptional cases, to avail ourselves of our having jurisdiction of the main action to declare (as a concurrent remedy with *certiorari*), under Arts. 608 and 609 of the Code of Practice, that the judgment appealed from was a "nullity" when the nullity was apparent on the face of the record. Arts. 608 and 609 of the Code of Practice declare that the nullity of a judgment may be demanded from the court which has rendered the same, or from the court before which the appeal was taken, but that the nullity can only be demanded on the appeal when the nullity is apparent on the face of the record. A practice similar to this (that is to say, throwing inside the powers of an appellate court certain matters ordinarily falling under "supervisory"

jurisdiction) seems to prevail in California, though on what particular ground it is based we do not know. (See 26 Pacific, 366, 367, and cases cited.)

Counsel of the city calls our attention to the fact that the recorder, in rendering the judgment which he· did, exceeded his jurisdiction in inflicting a heavier penalty than the law authorized, and suggests that, upon that ground, we could reverse the judgment without passing upon the legality of the ordinance. Granting that we could do so, our decree to that effect would give a very imperfect remedy, for the utmost we could do would be to send the case back for a proper sentence, leaving the judgment intact.

The party seeking relief at our hands has selected an appeal as the method of obtaining it. We can only dispose of cases as we find them. In appeals of the character of the present, we have repeatedly held that the issue before us was restricted to the question of the legality and constitutionality of the ordinance upon which the prosecution was based, and did not extend to a decision upon the correctness of the judgment appealed from. To reverse the judgment we should be able to declare, and should in fact declare, that the ordinance whose violation was sought to be punished was, or was not, constitutional or legal. The admissions made by counsel of the city in this case would lead up to no such conclusion or result; on the contrary, the character of the ordinance itself or its binding force would be left untouched, and the only matter upon which our action would be invoked would be as to whether the judgment of the recorder was correct or not. It is expressly conceded by counsel that the provisions of the ordinance do not extend to the state of facts shown. If that be true, then we are not in a position to express any opinion about the legality or constitutionality of the ordinance itself.

The very foundation of the right of the city to insist that the judgment of a recorder's court, in the matter of the conviction under a municipal ordinance, should remain untouched under an issue as to the legality of the ordinance, would be to insist not that the ordinance did not extend to the facts shown, but, on the contrary, that the ordinance did extend and was intended to extend thereto, and that so extending and so intended to extend the ordinance was still legal. On the other·hand, the foundation of the right of the party who had been convicted under the ordinance to have the judgment

appealed from reversed would be the counter claim made by him that granting, as a conceded fact, that his acts, such as they were charged or shown, fell under the precise terms of the ordinance, none the less he could not be convicted under it, because if held to so apply the ordinance would be unconstitutional or illegal.   Were this case before us under a contention of that precise character between the parties, we might be justified in determining and declaring whether the ordinance was legal or constitutional or reasonable or not; but if we were to give effect to the admission of counsel of the city we could not reverse the judgment, as they ask us to do on rehearing. We would have to dismiss the appeal. Appellant necessarily objects to admissions which would affirm the judgment. He contends that granting that he actually did what the city charges him with having done, and granting that his case fell under the precise terms of the ordinance as charged in the complaint against him, he none the less could not be fined or imprisoned, because the directions of the ordinance that he should, through criminal proceedings, be fined for doing the act for which he stood charged and convicted were illegal. The question comes back to us: what was the particular act which under the ordinance was made a "MISDEMEANOR," and what the particular act for which he was prosecuted, and what the powers of the city in respect to it.   An examination of the complaint shows that independently of any question whether the constructions which appellant had put up conformed to the requirements of the regulations of the city in respect to constructions, and independently of any question as to whether he had obeyed the provisions of the ordinance requiring him prior to making the same to have submitted the plans of the same to the City Engineer, he was charged as for a criminal offence, because he had, in violation of the terms of the ordinance, put up his constructions before having obtained a permit from the City Engineer.   A simple failure to have done this could not, in our opinion, be by the City Council, under its powers, made a "misdemeanor," punishable by fine or imprisonment.

Unless we could have either said this or could have announced that we upheld " the legality of the ordinance," we would have been forced to dismiss the appeal.

Rehearing refused.

MR. JUSTICE MILLER dissents.